Harold Russell WALLACE, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–00–00066–CR.

Court of Appeals of Texas,
El Paso.

May 24, 2001.

E. "Dude" Martin, Midland, for Appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Eric Kalenak, Asst. Dist. Atty., Midland, for State.

Before LARSEN, McCLURE, and CHEW, JJ.

## OPINION

McCLURE, Justice.

Harold Russell Wallace appeals his convictions for four counts of indecency with a child by sexual contact. A jury found Appellant guilty and assessed punishment at imprisonment for a term of 10 years and a $10,000 fine with respect to each count. On appeal, Appellant challenges the legal and factual sufficiency of the evidence supporting Counts III and IV. We affirm.

## FACTUAL SUMMARY

Appellant shared an apartment in Midland, Texas, with Cody Allison. Allison's two children, a fourteen-year-old daughter, S.A., and ten-year-old son, A.A., regularly went to their father's apartment for weekend visitation. If Allison worked during the weekend, S.A. and A.A. stayed with Appellant. Allison subsequently became engaged to Carolyn Dow who lived in an apartment above Appellant and he moved into her apartment. When S.A. and A.A. visited Allison, S.A. stayed in the apartment with Dow and Allison while A.A. and Dow's son slept in Appellant's apartment. During several of these visits, Appellant touched A.A.'s penis with his hand, and according to A.A.'s testimony, he also placed A.A.'s penis in his mouth. A.A. later told S.A. what had happened but she did not immediately tell anyone. Later, however, while watching a television show about pedophiles and child sexual abuse, S.A. told A.A. to tell their mother what Appellant had done to him.

Occasionally, A.A.'s friends, nine-year-old M.P. and six-year-old P.P., visited him in Appellant's apartment. M.P. and P.P. lived with their mother in the same apartment complex. While watching television, Appellant put M.P. on his knee and bounced him. As he did this, Appellant placed his hand inside of M.P.'s clothing and touched what he referred to as his "front private." Appellant touched M.P. in this fashion on numerous occasions. Appellant also touched P.P. several times by placing his hand inside of his pants for the stated purpose of determining whether he had wet his pants. P.P. stated that Appellant reached beneath his underwear and rubbed his "winkie" or "Mr. Winkie."

A grand jury indicted Appellant for one count of aggravated sexual assault and five counts of indecency with a child. Following trial on the merits, the jury found Appellant not guilty of the aggravated sexual assault of A.A. but found him guilty of four counts of indecency with a child. The State dismissed Count VI.

## SUFFICIENCY OF THE EVIDENCE

In Point of Error No. One, Appellant attacks the legal and factual sufficiency of the evidence to support his conviction of Count III because the State failed to prove that he acted with intent to arouse or gratify his sexual desire. In Point of Error No. Two, he directs the same challenges to his conviction of Count IV.[1]

---

1. Appellant does not raise any issues on appeal related to his convictions of Counts II or

V.

## Standards of Review

■ In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson,* 819 S.W.2d at 843. Further, the standard of review is the same for both direct evidence and circumstantial evidence cases. *Geesa,* 820 S.W.2d at 158.

■ When conducting a review of the factual sufficiency of the evidence, we consider all of the evidence, but we do not view it in the light most favorable to the verdict. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Levario v. State,* 964 S.W.2d 290, 295 (Tex.App.—El Paso 1997, no pet.). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996), *cert. denied,* 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). A defendant challenging the factual sufficiency of the evidence may allege that the evidence is so weak as to be clearly wrong and manifestly unjust, or in a case where the defendant has offered contrary evidence, he may argue that the finding of guilt is against the great weight and preponderance of the evidence. *See Johnson,* 23 S.W.3d at 11. Although we are authorized to set aside the fact finder's determination under either of these two circumstances, our review must employ appropriate deference and should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any evidence presented at trial. *See Johnson,* 23 S.W.3d at 7. We are not free to reweigh the evidence and set aside a verdict merely because we feel that a different result is more reasonable. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997); *Clewis,* 922 S.W.2d at 135.

## Intent to Arouse or Gratify Sexual Desire

■ Counts III and IV of the indictment alleged that Appellant touched a part of the genitals of M.P. and P.P., respectively, with the intent to arouse or gratify his own sexual desire. Intent is a fact question for the trier of fact, and it may be inferred from the acts, words, and conduct of the accused. *Manrique v. State,* 994 S.W.2d 640, 649 (Tex.Crim.App. 1999); *Hernandez v. State,* 819 S.W.2d

806, 810 (Tex.Crim.App.1991). As a result of its nature, mental culpability must generally be inferred from the circumstances under which a prohibited act or omission occurs. *Hernandez*, 819 S.W.2d at 810; *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim.App.1984). The intent to arouse or gratify may be inferred from conduct alone and there is no requirement of an oral expression of intent. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Crim.App.1981); *Lozano v. State*, 958 S.W.2d 925, 930 (Tex. App.—El Paso 1997, no pet.); *Tyler v. State*, 950 S.W.2d 787, 789 (Tex.App.— Fort Worth 1997, no pet.).

### Legal Sufficiency

■ Taken in the light most favorable to the verdict, the evidence showed that Appellant touched M.P.'s genitalia by reaching underneath his shorts and underwear, bouncing it up and down with his hand. As he touched M.P.'s penis, Appellant said, "I got it, I got it." M.P. described Appellant as excited and laughing. The jury could have inferred from Appellant's conduct and his state of excitement that he touched M.P. genitals with an intent to arouse or gratify his sexual desire.

In the case of P.P., Appellant reached inside of P.P.'s pants and rubbed his genitals for the stated purpose of determining whether he had wet his pants. Appellant had engaged in this conduct on many other occasions. From Appellant's action of reaching inside of P.P.'s underwear and rubbing the child's penis, a rational jury could have inferred that he possessed the requisite intent. Consequently, the evidence is legally sufficient to support both Counts III and IV.

### Factual Sufficiency

■ Appellant first argues that the testimony of M.P. and P.P. should be closely scrutinized because of the terms they used to describe their genitalia. M.P. used the term "front private" while the younger P.P. referred to his genitals as his winkie or Mr. Winkie. We understand Appellant to argue that the evidence is factually insufficient because the children's language is not sufficiently sophisticated. This argument has typically been made in connection with the sexual contact element. In examining legal sufficiency of the evidence in sexual offenses involving children, reviewing courts have traditionally been mindful of a child's lack of technical knowledge in accurately describing the parts of the body. *See Clark v. State*, 558 S.W.2d 887, 889 (Tex.Crim.App.1977); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.); *O'Hara v. State*, 837 S.W.2d 139, 142 (Tex.App.— Austin 1992, pet. ref'd); *Chase v. State*, 750 S.W.2d 41, 44 (Tex.App.—Fort Worth 1988, pet. ref'd). As a matter of public policy, the appellate courts of this state do not expect child victims of crime to testify with the same clarity and ability as is expected of mature and capable adults. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim.App.1990); *Gottlich v. State*, 822 S.W.2d 734, 741 (Tex.App.—Fort Worth 1992, pet. ref'd). Consequently, a child's use of unsophisticated language will not render the evidence legally insufficient to establish guilt. In reviewing the sexual contact element, courts view the critical inquiry as whether the child has sufficiently communicated to the trier of fact that the touching occurred to a part of the body within the definition of the controlling statute. *See e.g., Gottlich*, 822 S.W.2d at 741 (sexual contact proven where thirteen-year-old used words "my private," "my pee pee" and "down there" and stated that defendant had placed "his hand down my pants and panties"); *Guia v. State*, 723 S.W.2d 763, 765 (Tex.App.—Dallas 1986, pet. ref'd)(touching where one "uses the restroom" sufficient for sexual contact);

*Bryant v. State,* 685 S.W.2d 472, 475 (Tex. App.—Fort Worth 1985, pet. ref'd)(being touched "between the legs" sufficient for sexual contact). Although we are reviewing factual sufficiency of the evidence to establish Appellant's intent rather than the sexual contact element as discussed in *Clark* and the other authorities, we believe the same rule should apply, and therefore, we will not hold that the children's lack of sophistication renders the evidence factually insufficient. Instead, we will review all of the evidence to determine whether the jury's finding of intent is against the great weight and preponderance of the evidence.

Appellant also contends that the evidence is factually insufficient because the trial testimony of the two children differed dramatically from their videotaped statements. We have reviewed the videotaped statements of both M.P. and P.P. and agree with Appellant that some of the statements vary from their testimony. For example, M.P. stated that Appellant only touched him once and it was an accident. However, the jury also heard extensive testimony from Andra Kay Chamberlin, who is Program Director and Lead Forensic Interviewer at the Children's Advocacy Center. Chamberlin explained for the jury the criteria she utilized in assessing the validity of a child's statement of abuse, which included the appropriateness of the child's language relative to age, the ability to provide details regarding the abuse, the level of sexual knowledge, and repetition of core details. A child's memory of abuse can vary according to whether it is a single incident or multiple incidents. More specifically, a child may recall more details about a novel or one-time incident as opposed to multiple incidents because in the latter case, the events tend to become blended together and are difficult to separate. Chamberlin also discussed the five distinct stages of disclosure experienced by a child. First, a child typically denies

that abuse has occurred even when asked direct questions about it. In the second tentative stage, the child will say that the abuse happened but will minimize it, saying, for example, that it only happened twice when the abuse actually happened more often. A child might also claim to have been asleep when the abuse occurred or he might say that it happened to a brother or someone else but not admit that it also happened to him. However, if a child receives support from family and professionals, then the vast majority of children will move from the tentative stage to a more active stage of disclosure. At that point, the abused child will begin to relate details about the abuse. Children sometimes move into a fourth stage in which they recant their prior statements of abuse, mostly commonly because of a lack of continued support in the home. The recantation stage is often followed by reaffirmation, particularly if the child receives support. With regard to the videotaped statements of M.P. and P.P., Chamberlin explained that the children were still in the tentative stage of disclosure at the time they made the videotaped statements. Thus, M.P.'s statements which minimized the abuse are consistent with this stage of disclosure. As he subsequently received support and his comfort level increased, however, M.P. became more comfortable with disclosing not only that abuse had occurred but also its details.

▅▅▅▅ Appellant touched M.P.'s genitalia by reaching underneath his shorts and underwear. There is no evidence that Appellant had a legitimate purpose in touching M.P., and further, Appellant exclaimed, "I got it, I got it," while appearing excited. While M.P.'s videotaped statement does not precisely mirror his trial testimony, the jury heard evidence which explained that disparity. We will not substitute our judgment for that of the jury in

deciding this issue of credibility. Based upon Appellant's conduct and appearance, the jury's determination that Appellant touched M.P. with the intent to arouse or gratify his sexual desire is not so contrary to the overwhelming weight of the evidence as to be manifestly unjust.

In the other case, Appellant stated to P.P. as he reached inside of his clothing that he needed to determine whether he had urinated in his pants. Appellant did not explain why he needed to reach inside of the child's underwear to make this determination and the jury could have found it unnecessary. As was the case with M.P., the jury resolved any issues of credibility in favor of the State and its decision in that regard is rational and supported by the evidence. Given Appellant's repeated and extended touching of P.P.'s genitals, the jury's finding that Appellant touched the child with the intent to arouse or gratify his own sexual desire is not so contrary to the overwhelming weight of the evidence as to be manifestly unjust. For these reasons, the evidence is factually sufficient to support both Counts III and IV. Points of Error Nos. One and Two are overruled and the judgment of the trial court is affirmed.